UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO: 3:09-CV-37-RJC-DCK

| | | |
|---|---|---|
| LATISKIA CHAPMAN, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| DUKE ENERGY CAROLINAS, L.L.C., | ) | |
| DUKE ENERGY CAROLINAS PLANT | ) | |
| OPERATIONS, L.L.C., and TODAY'S | ) | |
| STAFFING, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Motion to Dismiss Plaintiff's Complaint" and its supporting Memorandum (Doc. Nos. 16 & 17) filed by Defendants Duke Energy Carolinas, L.L.C., and Duke Energy Carolinas Plant Operations, L.L.C. (collectively, "Duke Energy"); Plaintiff's Memorandum in Opposition to the Motion (Doc. No. 23); and Duke Energy's Reply (Doc. No. 26). For the reasons stated below, Duke Energy's Motion to Dismiss will be **granted in part** and **denied in part**.

## I. BACKGROUND

Plaintiff's verified Complaint (Doc. No. 1) sets forth the following allegations: Plaintiff, a black woman, was hired in 2005 by Today's Staffing, Inc. ("Today's Staffing"), a temporary staffing company and co-defendant in this litigation, and placed with Duke Energy as an administrative assistant. She worked at Duke Energy in this capacity for eighteen months without any reports of misconduct. On March 19, 2007, Plaintiff was reassigned to a department within Duke Energy

known as "DCS," where she was the only black employee. Plaintiff's new manager, Julius Bryant, subsequently ordered her to submit to a psychiatric evaluation as a condition to continued employment; none of her white co-workers were required to undergo similar testing. Shortly thereafter, Plaintiff's co-workers began to complain that Plaintiff took frequent and lengthy breaks, although her breaks were not longer or more frequent than Duke Energy permitted. Bryant began to frequently reprimand Plaintiff for the conduct reported by her co-workers. Plaintiff alleges that during these reprimands, Bryant made several racially-charged comments, such as, "Do all black people go to the bathroom all the time?" and, "Do all black people put weave in their hair?"

Subsequently, Bryant issued Plaintiff a standing order to inform her co-workers whenever she left her work station, telling her that she was not allowed "even to go outside to spit" without letting her co-workers know beforehand. Plaintiff began to receive reprimands for missing mandatory departmental meetings of which she had not received notice. Bryant began to alter Plaintiff's time sheet, without her knowledge, to reflect hours worked that he believed were accurate. Plaintiff told Bryant that she believed he discriminated against her because of her race; Duke Energy took no remedial action. Plaintiff similarly complained to Today's Staffing, but was told to "think about her paycheck," and to remember that Duke Energy was "paying" Today's Staffing.

Shortly after Plaintiff made another complaint of racial discrimination, Today's Staffing informed her that she had been discharged from working with Duke Energy because "things were not working out." Today's Staffing did not place Plaintiff with another client, nor did it give her a reason for not doing so.

On May 4, 2007, Plaintiff filed EEOC charges against Duke Energy and Today's Staffing for racial discrimination (Doc. No. 1-2: Pl. Exs. A &B). Later, on August 9, Plaintiff filed a second

charge against Today's Staffing for retaliation, alleging that Today's Staffing had refused to refer her for other temporary positions because of the discrimination charge she had filed in May. (Doc. No. 1-2: Pl. Ex. C). On November 5, 2008, she received "right to sue" notices from the EEOC for the charges filed against Duke Energy and Today's Staffing. (Doc. Nos. 1-7: Pl. Ex. G; 1-8: Pl. Ex. H; & 1-9: Pl. Ex. I).

On February 2, 2009, Plaintiff filed a Complaint in federal court against Defendants Duke Energy and Today's Staffing, alleging the following causes of action against each party: (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) retaliation in violation of Title VII; (3) negligent supervision of employees under state law; and (4) wrongful discharge in contravention of North Carolina's Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2.

On March 23, 2009, Duke Energy filed the instant motion and supporting memorandum (Doc. Nos. 16 & 17) to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) on the ground that Plaintiff does not sufficiently allege that Duke Energy actually hired, employed, or terminated her. (Doc. No. 16 at 2). In the alternative, Duke Energy moves to dismiss certain of Plaintiff's individual claims on the following grounds: (1) Plaintiff did not allege retaliation in the EEOC charge she filed against Duke Energy, thereby failing to exhaust administrative remedies with respect to her retaliation claim; (2) the NCEEPA does not support claims seeking to recover for pre-termination discrimination; and (3) neither Plaintiff's Title VII claims nor her wrongful discharge claim may serve as an "underlying tort" to support her state law

claim of negligent supervision. (Id. at 1-2).[1] Plaintiff filed a response to the motion on April 7, 2009 (Doc. No. 23), to which Duke Energy replied on April 20 (Doc. No. 26). Thus, the instant motion to dismiss is fully briefed and ripe for review.

### III. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N. C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993) (citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1356 (1990)). The issue is not, therefore, whether Plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support her claims.

To survive a Rule 12(b)(6) motion to dismiss, the facts alleged "must be enough to raise a right to relief above the speculative level" and provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court recently emphasized that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1954 (2009). The Court will "view the complaint in the light most favorable to the Plaintiff," Mylan Labs, Inc. v. Matkari, 1130, 1134 (4th Cir. 1993), and accept as true all well-pleaded factual allegations in the complaint, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508, n.1 (2002). The court need not, however, "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Jonson, 520 F.3d 298, 302 (4th Cir. 2008); see also E. Shore Mkts., Inc. v. J.D. Assocs.

---

[1] Today's Staffing filed an Answer (Doc. No. 10) to Plaintiff's Complaint and has not joined Duke Energy in moving for dismissal.

Long Term Disability P'ship, 213 F.3d 175, 180 (4th Cir. 2000). A Rule 12(b)(6) motion simply tests the sufficiency of the complaint; it does not decide the merits of the action. Republican Party, 980 F.2d at 952.

## IV. DISCUSSION

### A. Employment Discrimination

Plaintiff's first cause of action alleges that Duke Energy subjected her to various discriminatory practices such as disparate treatment, harassment, unfair job demands, unwarranted disciplinary action, and ultimately termination, all in violation of Title VII. (Doc. No. 1: Compl. ¶ 45). Duke Energy argues that Plaintiff's Complaint fails to establish the Court's subject-matter jurisdiction over her Title VII claims by sufficiently pleading that she was Duke Energy's "employee" as that term is used in Title VII. See Bryant v. Clevelands, Inc., 193 F.R.D. 486, 487-88 (E.D. Va. 2000) (explaining that a plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over a Title VII claim). The definitions provided in Title VII offer little guidance when, as is the case here, a plaintiff's status as a current or former employee is disputed. See 42 U.S.C. § 2000e(f) (defining an "employee" as "an individual employed by an employer") and 2000e(b) (defining an "employer" as "a person . . . who has fifteen or more employees").

Instead, courts presume that by using the term "employee," Congress intended to describe "the conventional master-servant relationship as understood by common-law agency doctrine." Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 259 (4th Cir. 1997) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322-23, (1992)). In other words, Plaintiff's status as an "employee" for purposes of Title VII turns upon whether her relationship with Duke Energy more closely resembled that of an agent or an independent contractor. Cilecek, 115 F.3d at 261 (citing

MacMullen v. S. C. Elec. & Gas Co., 312 F.2d 662, 670 (4th Cir. 1963)). In Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730 (1989), the United States Supreme Court identified the following as factors often relevant to an agent/independent contractor inquiry:

> (1) the skill required; (2) the source of the instrumentalities and tools; (3) the location of the work; (4) the duration of the relationship between the parties; (5) whether the hiring party has the right to assign additional projects to the hired party; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the hired party's role in hiring and paying assistants; (9) whether the work is part of the regular business of the hiring party; (10) whether the hiring party is in business; (11) the provision of employee benefits; and (12) the tax treatment of the hired party.

Id. at 751-52; see also Farlow v. Wachovia Bank of North Carolina, N.A., 259 F.3d 309, 313 (4th Cir. 2001); Cilecek, 115 F.3d at 260 (Title VII cases quoting Reid). "No one factor is determinative, and the consideration of factors must relate to the particular relationship under consideration." Cilecek, 115 F.3d at 260. Thus, it is often appropriate to alter or supplement the Reid factors to fit the particular nature of the relationship examined. See id. at 260-61 (applying specifically-tailored factors to determine employee status Title VII). Often, however, the three most important inquiries are whether the defendant exercised significant control over the plaintiff's hiring, firing, or working conditions. Paroline v. Unisys Corp., 879 F.2d 100, 104 (4th Cir. 1989), aff'd in part, 900 F.2d 27 (1990) (per curiam).

Plaintiff pleads that she was hired by Today's Staffing and placed with Duke Energy to work in "various administrative roles." (Doc. No. 1: Compl. ¶ 25). She later began working in the DCS division, where her manager, Julius Briant, exerted several forms of direct supervision over her employment. He ordered her to submit to a psychiatric evaluation in order to maintain her position. (Id. ¶ 28). He ordered her to inform her co-workers when she took breaks from work (Id. ¶ 31), and

he insisted on reviewing her time sheets before she could submit them to payroll (Id. ¶ 33). When she complained to Today's Staffing about her work environment, Today's Staffing told Plaintiff to "just deal with it," to "think about her paycheck," and to remember that Duke Energy was "paying" Today's Staffing. (Id. ¶ 37). Plaintiff received notice of her dismissal from a representative of Today's Staffing, who informed her that Duke Energy had terminated her employment because "things were not working out." (Id. ¶ 38; Doc. No. 1-2: Pl. Ex. B at 2).

Upon these pleaded facts, Plaintiff makes a plausible showing that discovery will reveal evidence of Duke Energy's exercise of control over Plaintiff such that she was its "employee" for purposes of Title VII. Although the allegations do not make explicitly clear the method by which Plaintiff received compensation, the Complaint does allege that Duke Energy, acting through Bryant, exerted direct control over Plaintiff's working conditions, the hours for which she was paid, and ultimate decisions concerning her employment. These are enough pleaded facts to establish a plausible employment relationship. A more definitive analysis of Plaintiff's status as "employee" may become appropriate for the Court after discovery and upon a motion for summary judgment. See, e.g., West v. MCI Worldcom, Inc., 205 F. Supp. 2d 531, 540-41 (E.D. Va. 2002); Williams v. Grimes Aerospace Co., 988 F. Supp. 925, 935-36 (D.S.C. 1997) (considering the issue upon defendant's motion for summary judgment). For now, however, Plaintiff's pleaded facts are sufficient to withstand dismissal of her Title VII claims on the ground that she was not Duke Energy's "employee."

The Court does not find persuasive Duke Energy's argument that no employment relationship existed because Plaintiff merely alleges that she "worked with," rather than "worked for," Duke

Energy. (Doc. No. 17 at 6-7).[2] The Court finds no reason to dismiss Plaintiff's Title VII claims for her failure to plead what is essentially a legal conclusion, see Cilecek, 115 F.3d at 261 ("[W]hether an employment relationship . . . was created . . . is a question of law."), when she has alleged "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547.

### B. Retaliation

Plaintiff's second cause of action for retaliation under Title VII rests upon an allegation that she "was removed from her employment with Defendant Duke Energy based upon the fact that Plaintiff complained about the violation of her civil rights." (Doc. No. 1: Compl. ¶ 52). Plaintiff's EEOC charge against Duke Energy alleged that "[t]hroughout the duration of [her] employment, [she] was subjected to different terms and conditions" than her white co-workers. (Doc. No. 1-2: Pl. Ex. B). She further alleged that Duke Energy discharged her, giving as a reason only that "things were not working out." (Id.). Plaintiff stated in her charge that Duke Energy took these actions against her because of her race, but did not check the "retaliation" box on the EEOC charge form, as is customary if including such an allegation. (Id.).

Title VII's administrative exhaustion requirement exists to not only provide employers with notice of the charge and encourage informal conciliation, but is also central to the remedial purpose of the statute itself:

---

[2] Duke Energy emphasizes the following wording in Plaintiff's Complaint as proof of her failure to plead an employment relationship: "Today's Staffing, Inc. hired Plaintiff to work with Defendant Duke Energy in various administrative roles." (Doc. No. 1: Compl. ¶ 25); "Prior to 2007, Plaintiff worked with Defendants over the course of 18 months . . . ." (Id. at ¶ 26); "On or about March 19, 2007, Plaintiff was assigned to a department called 'DCS' with Defendant Duke Energy . . . ." (Id. at ¶ 27); "Plaintiff was informed that she was being discharged from working with Defendant Duke Energy . . . ." (Id. at ¶ 38); and "Shortly after her removal of job assignment with Defendant Duke Energy . . . ." (Id. at ¶ 39).

> Congress had reasons beyond those of notice and conciliation for placing primary enforcement responsibility in the administrative process. Congress, through Title VII, wanted to end discrimination, wherever it was found. The admirable goals of Title VII need not always be tied to the ponderous pace of formal litigation, with the result that victims of discrimination are forced to wait while injustice persists. Moreover, the EEOC undertakes detailed investigations into potential discrimination claims before any suit is filed, both preserving judicial economy, and helping prospective plaintiffs build their case. In fact, the EEOC can itself file suit and direct its arsenal of resources against the offending party, thereby raising the stakes for recalcitrant employers. Finally, the EEOC has considerable expertise in the area of employment discrimination, and is thus better equipped to implement Title VII's goals. For all these reasons, the administrative process is an integral part of the Title VII enforcement scheme.

Chacko v. Patuxent Inst., 429 F.3d 505, 510 (4th Cir. 2005) (internal quotations and citations omitted). Essential to this administrative scheme is the requirement that a plaintiff must first exhaust administrative remedies available with the EEOC before filing suit under Title VII. Davis v. North Carolina Dep't of Corrections, 48 F.3d 134, 136-37 (4th Cir. 1995); King v. Seaboard Coast Line R. R. Co., 538 F.2d 581, 583 (4th Cir. 1976). Moreover, "[t]he EEOC charge defines the scope of the plaintiff's right to institute a civil suit." Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 132 (4th Cir. 2002) (citing Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)). Thus, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Chacko, 429 F.3d at 506 (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)). No separate charge is required, however, for retaliatory acts that occur after and in response to an employee's initial charge. Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992).

Here, Plaintiff failed to exhaust administrative remedies with respect to her claim for retaliation. Plaintiff's contention that her allegation of discriminatory termination gave the EEOC

sufficient notice to investigate possible retaliation (Doc. No. 23 at 9) fails to recognize the crucial difference between an allegation of termination due to race and termination in retaliation against exercise of rights under Title VII. Although both employment practices are prohibited by Title VII, they are addressed in different statutes and prohibit different employer conduct. See 42 U.S.C. §§ 2000e-2 (prohibiting race discrimination) and 2000e-3 (prohibiting retaliation). When Plaintiff stated on her charge that "I believe that I have been discriminated against because of my race," tracking the language of § 2000e-2, she gave no indication that she intended to make an additional charge of retaliation under § 2000e-3. Missing from her charge was any allegation that she had suffered discrimination because of her opposition to an unlawful employment practice or pursuit of administrative relief under Title VII.[3] Moreover, Plaintiff's failure to file a charge of retaliation is not excused under Nealon, supra, because she filed her EEOC charge on May 4, 2007, after her termination occurred on April 19. (Doc. No. 1-2: Pl. Ex. B, EEOC Charge). Thus, Plaintiff's claim of retaliation exceeds the limits set by her administrative charge, and it must be dismissed. Chacko, 429 F.3d at 506; Bryant, 288 F.3d at 133.

### C. Negligent Supervision

Plaintiff's third cause of action is based on the common law theory of negligent supervision, alleging that Duke Energy "tolerated, condoned, and/or ratified" conduct that it should have known violated her "federally protected rights." (Doc. No. 1: Compl. ¶ 56). Under North Carolina law, a claim for negligent supervision must allege the following: (1) that an incompetent employee

---

[3] Plaintiff's Exhibit E, which discusses the EEOC's findings with respect to her charge against Duke Energy, was stricken from her Complaint under Rule 12(f). (Doc. No. 28: Order). Even if the Court were to examine this exhibit for the limited purpose of determining whether the EEOC did in fact investigate a charge of retaliation, it provides no indication that the EEOC made such an investigation.

committed a tortious act resulting in injury to the plaintiff; and (2) that prior to the act, the employer knew or had reason to know of the employee's incompetency. Smith v. First Union Nat'l Bank, 202 F.3d 234, 249-50 (4th Cir. 2000) (citing Hogan v. Forsyth Country Club Co., 340 S.E.2d 116 (N.C. App. 1986)).

Plaintiff asserts that her "underlying tort for the cause of action of negligent supervision . . . is wrongful termination." (Doc. No. 23 at 11-12). Even if the Court were to recognize wrongful termination as a common-law tort, Plaintiff still fails to adequately plead that Duke Energy knew or had reason to know that one of its employees was likely to commit such a tortious act. Smith, 202 F.3d at 250. Plaintiff generally alleges that Duke Energy failed to "adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize . . . its employees" and "tolerated, condoned, and/or ratified" their actions. (Doc. No. 1: Complaint at ¶¶ 56 and 57). The only other employee mentioned by name in Plaintiff's Complaint is Julius Bryant. (Doc. No. 1: Compl. ¶¶ 28, 30-31, & 33-35). Plaintiff fails to identify any of Bryant's supervisors, nor does she plead underlying facts establishing how, when, and to what extent they became aware of Bryant's conduct. Although Plaintiff alleges that she "consistently complained" to Bryant about her alleged discriminatory treatment (Doc. No. 1: Compl. ¶ 35), nowhere in her Complaint does she allege that she complained to other supervisors or human resources personnel at Duke Energy. Nor did Plaintiff's EEOC charge provide Duke Energy with actual or constructive notice of Bryant's alleged conduct, as it was not filed until May 4, 2007, three weeks after her termination. (Doc. No. 1-2: Pl. Ex. B).

Without these critical allegations, Plaintiff's claim for negligent supervision does not adequately allege that Duke Energy knew or had reason to know of Bryant's alleged conduct prior to Plaintiff's termination. See Smith, 202 F.3d at 250 (requiring that a claim of negligent

supervision, premised on a violation of Title VII, must specifically allege that a manager's supervisors witnessed or otherwise became aware of his harassing behavior).[4] Instead, it consists merely of conclusory statements that lack adequate underlying facts to support them. See Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); E. Shore Mkts., 213 F.3d at 180 (refusing to accept as true "unwarranted inferences, unreasonable conclusions, or arguments"). Thus, Plaintiff has not sufficiently plead either element of negligent supervision and therefore her third cause of action fails to state a claim up on which relief may be granted.

### D. Wrongful Termination

Finally, Plaintiff's fourth cause of action alleges that "Defendants" subjected her to termination, disparate terms and conditions of employment, unjustified disciplinary action, and denied her employment, permanent employment, and promotions because of her race in contravention of the public policy declarations of the NCEEPA. (Doc. No. 1: Compl. ¶ 62). The NCEEPA publicly denounces employment "discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap." N.C. Gen. Stat. § 14-422.2. North Carolina law recognizes a cause of action for wrongful discharge when termination occurs for a reason that violates this and other express public policies. Mullis v. Mechanics & Farmers Bank, 994 F. Supp. 680, 687 (M.D.N.C. 1997) (citing Amos v. Oakdale Knitting Co., 416 S.E.2d 166, 169 (N.C. 1992)). Plaintiff may therefore advance a claim for wrongful discharge if she has sufficiently plead each of

---

[4] Smith expressly "decline[d] to decide whether a Title VII violation can be the underlying tort for a negligent supervision or retention claim under North Carolina law." Id. at 250 n. 12 (citing Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 774 (4th Cir. 1997)). In McLean v. Patten Cmtys., Inc., 332 F.3d 714 (4th Cir. 2003), The Fourth Circuit later held that Title VII claims may not serve as underlying torts to a claim of negligent supervision. Id. at 719.

the following: (1) that she was an at-will employee of Duke Energy; (2) Duke Energy terminated her employment; and (3) that Duke Energy terminated her employment because of her race or sex in contravention of the NCEEPA. See Crespo v. Delta Apparel, Inc., No. 5:07cv65, 2008 WL 2986279, at *4 (W.D.N.C. July 31, 2008) (outlining the general elements to a claim for wrongful discharge). Plaintiff, having already stated a claim against Duke Energy for relief under Title VII, must plead additionally that Duke Energy terminated her employment in order to state a claim of wrongful discharge.

Plaintiff's Complaint is ambiguous to the extent that it fails to identify which "Defendant" actually terminated her employment. (Doc. No. 1: Compl. ¶ 62). This ambiguity is resolved, however, by referencing the EEOC charge Plaintiff filed against Duke Energy. Just as it must accept as true all facts alleged in a complaint when testing the sufficiency of the pleadings, the Court also "accept[s] as true the facts set forth in the exhibits attached to the complaint." Jeffry M. Brown Assocs., Inc. v. Rockville Center, Inc., 7 F. App'x 197, 202 (4th Cir. April 3, 2001) (unpublished) (citing E. Shore Mkts., 213 F.3d at 180). The EEOC charge, which Plaintiff attached to her Complaint, alleges that Plaintiff "was informed . . . by Today's Staffing that [she] was discharged by the above employer." (Doc. No. 1-2: Pl. Ex. B at 2). The Court takes "the above employer" to mean Duke Energy, the target of Plaintiff's charge. Plaintiff has therefore alleged that Duke Energy terminated her employment; her claim is sufficiently plead to withstand dismissal on this ground.

To the extent, however, that Plaintiff also alleges disparate terms and conditions of employment, unjustified disciplinary action, and denial of employment, permanent employment, and promotions in contravention of the NCEEPA, she has not stated a claim upon which relief may be granted. (Doc. No. 1: Compl. ¶ 62). The NCEEPA itself does not create a private right of action

against all forms of discrimination that may be actionable under Title VII. Smith, 202 F.3d at 247; Mullis, 994 F. Supp. at 680. Its principles are vindicated only through the tort of wrongful discharge, which does not provide relief for any of the pre-termination adverse employment actions alleged in Plaintiff's Complaint. See Jones v. Duke Energy Corp., 43 F. App'x 599, 600 (4th Cir. Aug. 9, 2002) (unpublished) (declining to recognize a private right of action under the NCEEPA for retaliation, hostile work environment, disparate treatment, or constructive discharge in violation of public policy). Accordingly, any additional claims for relief under the NCEEPA beyond Plaintiff's claim of wrongful discharge must be dismissed.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the "Motion to Dismiss Plaintiff's Complaint" (Doc. No. 16) filed by Defendants Duke Energy Carolinas, L.L.C., and Duke Energy Carolinas Plant Operations, L.L.C. is **GRANTED IN PART** and **DENIED IN PART** such that:

1. Plaintiff's Second Cause of Action for Retaliation and Third Cause of Action for Negligent Supervision of an Employee are **DISMISSED**; and

2. Plaintiff's Fourth Cause of Action for Wrongful Discharge in Violation of North Carolina Public Policy is **DISMISSED IN PART** to the extent that it seeks recovery for pre-termination damages.

Signed: January 28, 2010

Robert J. Conrad, Jr.
Chief United States District Judge